IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

**FILED**

**March 6, 2014**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0117

DAVID W. DICKENS AND DEBORAH A. DICKENS,
Plaintiffs Below, Petitioners

v.

SAHLEY REALTY COMPANY, INC., A WEST VIRGINIA CORPORATION,
PATRICK L. STERNER, MELINDA R. STERNER, AND WHR GROUP, INC.,
A FOREIGN CORPORATION  DOING BUSINESS IN WEST VIRGINIA,
Defendants Below, Respondents

Appeal from the Circuit Court of Putnam County
Honorable Phillip M. Stowers, Judge
Civil Action No. 11-C-221-S

AFFIRMED

Submitted: February 11, 2014
Filed: March 6, 2014

James M. Cagle, Esq.
Charleston, West Virginia
Attorney for Petitioners

Jane E. Harkins, Esq.
Christopher C. Ross
Beckley, West Virginia
Attorney for Respondent
Sahley Realty Company, Inc.

Riley J. Romeo, Jr., Esq.
Christopher J. Winton, Esq.
Attorneys for Respondents
David W. Sterner and
Melinda R. Sterner


R. Vance Golden, III, Esq.
Attorney for Respondent
WHR Group, Inc.

The Opinion of the Court was delivered PER CURIAM.

**SYLLABUS BY THE COURT**

1.  "A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994).

2.  "Summary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).

3.  "Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff." Syl. Pt. 4, *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997).

i

4. "In order to avoid summary judgment or judgment as a matter of law, a plaintiff who seeks to proceed on a theory of *res ipsa loquitur* must demonstrate each of the three prongs of the test this Court adopted in syllabus point four of *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), as a predicate to application of the evidentiary rule of *res ipsa loquitur*." Syl. Pt. 6, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007).

5. "'"'The doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances." Syl. Pt. 5, *Davidson's, Inc. v. Scott*, 149 W.Va. 470, 140 S.E.2d 807 (1965).' Syl. Pt. 2, *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991)." Syl. Pt. 5, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007).

Per curiam:

The petitioners, David W. Dickens and his wife, Deborah A. Dickens, appeal from the January 8, 2013, final order of the Circuit Court of Putnam County granting summary judgment in favor of the respondents (defendants below), Sahley Realty Company, Inc., ("Sahley"), Patrick L. Sterner and his wife, Melinda R. Sterner (jointly referred to as "the Sterners"), and WHR Group, Inc. ("WHR"), and dismissing the action, with prejudice, as to all counts, counterclaims, crossclaims, and third-party claims. The petitioners assert that there are disputed material facts and, therefore, the circuit court erred by granting summary judgment. Upon our consideration of the appendix record in this matter, the briefs and arguments of the parties, the applicable legal authority, and for the reasons discussed below, we affirm the circuit court's final order.

## I. Factual and Procedural Background

In 1999, during the development of a subdivision known as Rosehill Acres–Section Three (the "Subdivision") located in Putnam County, West Virginia, Sahley, the Subdivision developer, caused a retention pond to be constructed in the Subdivision for the purpose of catching water runoff from the Subdivision pursuant to the requirements of the Putnam Planning Commission. The appendix record contains a Subdivision plat which reflects that this retention pond covers 0.696 acres. The eastern side of this particular retention pond shares a common boundary line with Lot 329 in the Subdivision.

1

In 2005, Sahley sold Lot 329 to Terlin Enterprises, LLC ("Terlin"), which subsequently constructed a house on the property. Terlin sold the property to the Sterners by deed dated May 19, 2006. A little over a year later,[1] the Sterners relocated out-of-state for Mr. Sterner's employment purposes. As an employee benefit, Mr. Sterner's new employer contracted with WHR, an employee relocation company, to handle the sale of the Sterners' home.

On May 6, 2008, the petitioners entered into a contract to purchase Lot 329.[2] Prior to purchasing the property, in addition to performing their own personal inspection, the petitioners retained a company that performed an independent inspection of the premises.[3] As a result of that professional inspection, the petitioners requested that several repairs be completed as a condition to their purchase of the property. None of these repairs involved the adjacent retention pond, although exterior regrading and landscaping work was performed. Following the completion of the repairs at a cost of more than four thousand dollars, the petitioners accepted the repair work performed. Thereafter, as a condition of the

---

[1]The Sterners resided on the subject property from May 2006 until August 2007.

[2]The petitioners received disclosure statements completed and signed by the Sterners, which did not indicate any encroachment on the property. The disclosure statements also reflect that the Sterners did not have Lot 329 surveyed before they purchased the property.

[3]In response to discovery requests, the petitioners concede they had no inspection performed in relation to the adjacent retention pond.

2

property closing, the petitioners signed a Release Agreement ("Release")[4] and, by deed dated September 27, 2007,[5] acquired Lot 329. The petitioners did not discuss the retention pond with the Sterners or WHR before they purchased the subject property.

The petitioners state that in July 2010 they discovered through conversations with neighbors that a problem existed with the eastern wall of the retention pond adjacent to their property. The petitioners refer to minutes from a November 3, 2005, meeting of the Subdivision's Homeowners Association ("HOA") which state, in part, "[c]oncern about the pit in back caving in[]" and to minutes from the HOA's November 20, 2006, meeting during which concerns regarding "pits" and "steps to take regarding the pit and slippage" were discussed.[6] Although the petitioners did not have Lot 329 surveyed prior to purchasing it,

---

[4]While this Release addressed the repair work performed at the petitioners' request, it also provided that the petitioners forever discharged the Sterners and WHR from all claims that might subsequently arise in connection with the purchase of the property.

[5]The appendix record reflects that the Sterners signed this deed as the grantors on September 27, 2007, leaving the grantee's name blank. Thereafter, WHR held the deed until the property was sold in 2008 to the petitioners, whose names were inserted into the deed as the grantees. Although the petitioners contend there is an issue as to whether the Sterners or WHR was the "seller," we find the issue irrelevant to our decision in this matter.

[6]The Sterners did not own the subject property in 2005, and, therefore, would not have been at the meeting in 2005. Although they owned Lot 329 in November 2006, the minutes reflect that they were not present at the November 20, 2006, meeting. Further, these minutes indicate that there is more than one "pit," and do not specify whether it is the subject retention pond that is being discussed, or, more specifically, whether it is the east wall of that pond. In April 2010, Sahley deeded all common areas in the Subdivision, including the retention ponds, to the HOA.

3

they contend they had it surveyed in July 2010, and that this survey showed the retention

pond had encroached upon their property. The petitioners never produced a survey in

response to the respondents' discovery requests seeking the same but, in September 2012,

their counsel invited the respondents' respective counsel to visit the property to observe the

survey stakes.[7]

On August 10, 2011, the petitioners instituted the instant action against Sahley,

WHR, and the Sterners through which they asserted claims for fraud, constructive fraud,

negligence, and breach of implied contract.[8] The petitioners essentially alleged that a "slip"

---

[7]During the October 2012 summary judgment hearing, the petitioners' counsel confirmed that there was no report of the July 2010 survey and that the dimensions of the alleged encroachment were unknown.

[8]Sahley filed a third-party complaint against the HOA seeking contribution and indemnification and alleging that under the Subdivision's declaration of covenants recorded in the Office of the Clerk of the County Commission in 1999, the HOA was created to "provide for the maintenance and preservation" of, *inter alia*, the retention pond (referred to in the declaration as a "detention" pond). The HOA participated in the litigation below, but did not participate in this appeal. Sahley and the Sterners each filed third-party complaints against Terlin seeking contribution and indemnification and alleging that during Terlin's construction of the house on Lot 329, it buried drainage pipes across the common property boundary and into the east wall of the retention pond, which altered or modified the structural integrity of the east wall. The Sterners also alleged they were never informed nor aware of any modifications or alterations to the retention pond by Terlin. The petitioners did not assert any claims against either the HOA or Terlin. A default judgment was entered against Terlin for its failure to answer or otherwise defend against the third-party action. Counterclaims and cross-claims seeking contribution and indemnification were asserted by and between each of the named defendants, as well as the appearing third-party defendant, the HOA.

4

occurred on the east side of the retention pond prior to their purchase of Lot 329, which allowed the pond to cross the common boundary line onto their property.

On April 27, 2012, a hearing was held before the circuit court on WHR's motion to dismiss and the Sterners' motion for summary judgment. In advance of this hearing, the petitioners' counsel filed an affidavit pursuant to Rule 56(f) of the West Virginia Rules of Civil Procedure, averring that summary judgment should not be granted because discovery was incomplete and that the petitioners would direct discovery to those neighbors with purported knowledge that a slip occurred in the boundary of the retention pond during the Sterners' ownership of the property. By order dated June 12, 2012, the circuit court denied the dispositive motions citing the procedural state of the case and the need for discovery.[9] Thereafter, the petitioners did not seek to discover any information from the respondents, nor did they disclose experts in compliance with the circuit court's scheduling order.[10] The petitioners did answer the respondents' discovery requests directed to them.

---

[9]The circuit court also directed the petitioners to file an amended complaint to more fully conform their fraud allegations to the requirements of Rule 9 of the West Virginia Rules of Civil Procedure. Pursuant to the circuit court's instruction, the petitioners filed an amended complaint reasserting their fraud allegations against WHR and the Sterners; they also reasserted their negligence allegations against Sahley regarding the construction of the pond and against WHR and the Sterners for failure to use reasonable care to discover and communicate "truthful information" regarding the subject property.

[10]Contrary to the circuit court's scheduling order, the petitioners' untimely expert witness disclosures did not include the requisite written reports or summaries of the experts' anticipated testimony, including the experts' opinions, the bases and reasons therefor, and

(continued...)

5

On October 26, 2012, the circuit court held a hearing on all outstanding dispositive motions.[11] On the eve of this hearing, the petitioners filed a supplemental response to Sahley's motion for summary judgment relying for the first time upon the doctrine of *res ipsa loquitur*. They argued that under this doctrine, the retention pond was negligently constructed and/or repaired by Sahley and that its condition could not exist without Sahley's negligence.[12] Neither prior to nor during this hearing did the petitioners present any depositions, expert witness reports, or any affidavits, other than their own, to resist the summary judgment motions,[13] and, during the summary judgment hearing, upon

---

[10](...continued)
the experts' qualifications.

[11]Both the Sterners and WHR moved for summary judgment on the basis of the Release. Although the circuit court noted the Release in the findings of fact in its summary judgment order, it did not rely upon the Release in its conclusions of law in granting summary judgment in favor of the Sterners and WHR. Consequently, we need not resolve the issues raised by the petitioners concerning the Release.

[12]The record and the petitioners' brief reflect an alternative theory: that the retention pond might have encroached upon Lot 329 from the time of its original construction in 1999. If this were the case, we question how the Sterners would have been aware of the encroachment since they, like the petitioners, did not have the property surveyed prior to purchasing it, nor did they have it surveyed during their brief ownership of the property.

[13]In support of their assertions, the petitioners offered: the unauthenticated HOA meeting minutes, discussed previously; their discovery responses, which included the names of certain neighbors who might have information regarding the retention pond and from whom they did not secure affidavits nor take any depositions, and the Sterners' disclosure statements; petitioner Deborah Dickens's affidavit in which she states that a July 2010 survey (which was never produced) confirmed the petitioners' concerns regarding the retention pond; and the petitioners' joint affidavit addressing the Release and their purported reliance upon the home inspection report prepared by RAL Inspection Services on behalf of WHR.
(continued...)

6

direct questioning by the circuit judge, the petitioners' counsel affirmed that they would be relying on *res ipsa loquitur* to sustain their claims.

On January 8, 2013, the circuit court entered a Final Order of Dismissal Based on Summary Judgment. The circuit court found, *inter alia*, that the petitioners had set forth no evidence of their damages[14] and "no evidence of current instability in the pond[] . . . [which] remains today as it was at the time of the conveyance to [the petitioners]." The circuit court noted that the petitioners' pretrial memorandum listed the doctrine of *res ipsa loquitur* as the only contested negligence issue,[15] but concluded that *res ipsa loquitur* was inapplicable because the petitioners failed to provide evidence that the retention pond had, in fact, moved or circumstantial evidence of the respondents' negligence.[16] The circuit court

---

[13](...continued)
A copy of this report is in the appendix record and states that it is "solely intended for use by" WHR and that the "information contained within this report is NOT intended to be used or relied upon by any other interested party. All interested parties should obtain their own independent home inspections."

[14]"'In this jurisdiction the burden of proving damages by a preponderance of the evidence rests upon the claimant[.]' Syllabus Point 4, in part, *Sammons Bros. Const. Co. v. Elk Creek Coal Co.*, 135 W.Va. 656, 65 S.E.2d 94 (1951)." *Taylor v. Elkins Home Show, Inc.*, 210 W.Va. 612, 619, 558 S.E.2d 611, 618 (2001).

[15]The petitioners' counsel made this same representation during the summary judgment hearing.

[16]*See* syl. pt. 4, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007) ("A plaintiff seeking to apply the doctrine of *res ipsa loquitur* is required to demonstrate that the evidence he or she intends to present is circumstantial evidence that will lead to
(continued...)

7

further found that the Sterners and WHR had not breached an implied contract because the petitioners received the benefit of their bargain for the property purchased.[17] The circuit court also found that the petitioners had offered no facts in discovery, by affidavit, or otherwise[18] that would support a finding in their favor on their claims of fraud, constructive fraud, and negligence against WHR and the Sterners under *Thacker v. Tyree*, 171 W.Va. 110, 297 S.E.2d 885 (1982); *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66 (1981); or *Teter v. Old Colony Co.,* 190 W.Va. 711, 441 S.E.2d 728 (1994).[19] The circuit court concluded that, having viewed the facts in a light most favorable to the petitioners, there were no genuine issues of material fact with regard to any of their claims. Accordingly, the circuit court granted summary judgment in favor of all the respondents. This appeal followed.

---

[16](...continued)
reasonable inferences by the jury, and is not simply evidence which would force the jury to speculate in order to reach its conclusion.").

[17]The circuit court also ruled that there was no merit to the petitioners' claims grounded in the violation of the covenant of good faith and fair dealing. *See Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love, LLP*, 231 W.Va. 577, ___, 746 S.E.2d 568, 578 (2013) (finding that implied covenant of good faith and fair dealing does not provide cause of action apart from breach of contract claim).

[18]The petitioners never secured affidavits or deposition testimony from the neighbors who allegedly told them that there had been a "slip" of which the Sterners were aware. Further, the petitioners did not depose the Sterners to inquire as to their knowledge of the alleged slip.

[19]*Teter* addressed the liability of a real estate broker for material misrepresentations regarding the fitness, habitability, or defects in residential property that substantially affect its value or habitability. Although the petitioners relied upon *Teter* below, they do not do so on appeal.

8

## II.  Standard of Review

We stated in syllabus point one of *Painter v. Peavy*, 192 W.Va. 189, 451 S.E.2d 755 (1994), that "[a] circuit court's entry of summary judgment is reviewed *de novo*." We further explained that "[s]ummary judgment is appropriate if, from the totality of the evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil, Inc.*, 194 W.Va. 52, 459 S.E.2d 329 (1995).  Against these standards, the parties' arguments will be considered.

## III.  Discussion

### A.  Summary judgment in favor of Sahley

The petitioners assert that questions of fact concerning their claims against Sahley preclude summary judgment.  They argue that a jury could find that a reasonable and prudent developer would not have allowed the retention pond to encroach upon the subject property, either during its original construction or through the alleged slippage, and that it is for a jury to determine what constitutes negligence.[20]  Conversely, Sahley argues that the petitioners failed to present more than a mere scintilla of evidence to resist its summary

---

[20]The petitioners also assert that the circuit court did not address their claim of trespass against Sahley.  A review of the petitioners' Amended Complaint does not reveal a claim for trespass against Sahley.

judgment motion, instead offering mere conjecture in the form of neighborhood rumors and unauthenticated HOA meeting minutes. Sahley further argues that the petitioners served no discovery on it; failed to show any genuine issue of material fact on the essential elements of negligence; and failed to demonstrate that Sahley owed any duty to the petitioners as mere subsequent purchasers of the subject property. Further, Sahley argues that the petitioners failed to offer any expert opinions that the alleged slip in the retention pond's eastern wall had occurred, or that there had been a resultant encroachment, or that Sahley's acts or omissions solely and proximately caused the alleged failure or erosion of the engineered wall of the retention pond to a reasonable degree of certainty and to the exclusion of all other potential natural or man-made causes. In short, Sahley asserts that the circuit court was left with "nothing to work with but the bald assertions" of the petitioners. We agree.

As we have previously explained,

[t]he movant's burden is "*only [to] point to the absence of evidence supporting the nonmoving party's case*." *Latimer v. Smithkline & French Laboratories*, 919 F.2d 301, 303 (5th Cir.1990). . . . If the movant . . . make[s] this showing, the nonmovant must go beyond the pleadings and contradict the showing by pointing to specific facts demonstrating a "trialworthy" issue. . . . As to material facts on which the nonmovant will bear the burden at trial, the nonmovant must come forward with evidence which will be sufficient to enable it to survive a motion for directed verdict at trial. If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. *See Nebraska v. Wyoming*, 507 U.S. 584, 590, 113 S.Ct. 1689, 1694, 123 L.Ed.2d 317, 328

10

(1993); *Lujan v. National Wildlife Federation*, 497 U.S. 871, 884, 110 S.Ct. 3177, 3186, 111 L.Ed.2d 695, 713 (1990).

*Merrill v. West Virginia Dept. of Health and Human Resources*, 219 W.Va. 151, 161, 632 S.E.2d 307, 317 (2006) (emphasis added) (quoting *Powderidge Unit Owners Ass'n v. Highland Props., Ltd.*, 196 W.Va. 692, 699, 474 S.E.2d 872, 879 (1996)). Here, the respondents clearly demonstrated the absence of evidence supporting the petitioners' case, notwithstanding the circuit court's decision to allow the petitioners time to gather supportive evidence. *See Gibson v. Little General Stores, Inc.*, 221 W.Va. 360, 361, 655 S.E.2d 106, 107 (2007) (finding that despite being given additional time by circuit court plaintiff unable to produce evidence to resist motion for summary judgment from which trier of fact could consider her claim on basis other pure speculation and conjecture).

To survive a motion for summary judgment, the party opposing summary judgment must satisfy the burden of proof "by offering more than a mere 'scintilla of evidence' and must produce evidence sufficient for a reasonable jury to find in a nonmoving party's favor. . . . The evidence illustrating the factual controversy cannot be conjectural or problematic." *Precision Coil*, 194 W.Va. at 60, 459 S.E.2d at 337. In *Dellinger v. Pediatrix Medical Group, P.C.*, 232 W.Va. 115, 750 S.E.2d 668 (2013), we further explained that "[w]hile it is true that 'the nonmoving party is entitled to the most favorable inferences that may reasonably be drawn from the evidence, [such evidence] "cannot create a genuine issue

11

of material fact through mere speculation or the building of one inference upon another.""" *Id.* at ___, 750 S.E.2d at 675 (internal citations omitted.).

In the case *sub judice,* the petitioners only offered conjecture and speculation, which left the circuit court with their phantom survey, unauthenticated and imprecise HOA meeting minutes, and unsworn rumors and speculations of certain neighbors. Although the petitioners offered their joint affidavit, it addressed the Release, which was not a basis for the circuit court's ruling, and petitioner Deborah Dickens's separate affidavit merely referenced, but did not attach, the alleged survey. Furthermore, "[s]elf-serving assertions without factual support in the record will not defeat a motion for summary judgment." *Precision Coil*, 194 W.Va. at 61 n.14, 459 S.E.2d at 338 n.14 (citation omitted).

Not unlike the plaintiff in *Dellinger*, the petitioners appear to have misapprehended their burden at the summary judgment stage. The foundation for all of the petitioners' claims was evidence that the eastern wall of the retention pond had actually slipped and encroached upon their property. Absent that foundation, all of the petitioners' claims fail. With particular regard to Sahley, without evidence of an actual slip and a resultant encroachment, there can be no claim for negligent construction or maintenance of the retention pond.

Under West Virginia law, "'[t]he burden is on the plaintiff to prove by a preponderance of the evidence that the defendant was negligent and that such negligence was the proximate cause of the injury.' Syllabus Point 2, *Walton v. Given*, 158 W.Va. 897, 215 S.E.2d 647 (1975)." Syl. Pt. 2, *Spencer v. McClure*, 217 W.Va. 442, 618 S.E.2d 451 (2005). Apparently recognizing the lack of evidence to support their negligence claim against Sahley, the petitioners advised the circuit court during the October 2012 summary judgment hearing that they did not intend to have any expert opinions[21] and were relying upon the doctrine of *res ipsa loquitur*. However, "a party cannot avoid summary judgment merely because the doctrine of res ipsa loquitur is invoked[,]"[22] and, as the circuit court concluded, the doctrine of *res ipsa loquitur* could not save the petitioners' case. We concur.

In syllabus point four of *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), we held, as follows:

> Pursuant to the evidentiary rule of *res ipsa loquitur*, it may be inferred that harm suffered by the plaintiff is caused by negligence of the defendant when (a) the event is of a kind which ordinarily does not occur in the absence of negligence; (b) other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the

---

[21]The petitioners' counsel commented during the summary judgment hearing that "the use of experts is overblown."

[22]*Crum v. Equity Inns, Inc.*, 224 W.Va. 246, 256, 685 S.E.2d 219, 299 (2009) (quoting, in part, syl. pt. 6, *Bronz v. St. Jude's Hosp. Clinic*, 184 W.Va. 594, 402 S.E.2d 263 (1991).

evidence; and (c) the indicated negligence is within the scope of the defendant's duty to the plaintiff.

We subsequently held that " [i]n order to avoid summary judgment or judgment as a matter of law, a plaintiff who seeks to proceed on a theory of *res ipsa loquitur* must demonstrate each of the three prongs of the test this Court adopted in syllabus point four of *Foster v. City of Keyser*, 202 W.Va. 1, 501 S.E.2d 165 (1997), as a predicate to application of the evidentiary rule of *res ipsa loquitur*." Syl. Pt. 6, *Kyle v. Dana Transport, Inc.*, 220 W.Va. 714, 649 S.E.2d 287 (2007). Indeed,

> "'[t]he doctrine of *res ipsa loquitur* cannot be invoked where the existence of negligence is wholly a matter of conjecture and the circumstances are not proved, but must themselves be presumed, or when it may be inferred that there was no negligence on the part of the defendant. *The doctrine applies only in cases where defendant's negligence is the only inference that can reasonably and legitimately be drawn from the circumstances*.' Syl. Pt. 5, *Davidson's, Inc. v. Scott*, 149 W.Va. 470, 140 S.E.2d 807 (1965)." Syl. Pt. 2, *Farley v. Meadows*, 185 W.Va. 48, 404 S.E.2d 537 (1991).

Syl. Pt. 5, *Kyle,* 220 W.Va. at 716, 649 S.E.2d at 289 (emphasis added.).

In the case at bar, and as the circuit court correctly found, the petitioners cannot satisfy the first *Foster* factor—that "the event is of a kind which ordinarily does not occur in the absence of negligence"—because the petitioners had not provided evidence that the retention pond had, in fact, moved or that the respondents were negligent. *Foster*, 202 W.Va. at 168, 501 S.E.2d at 4, syl. pt. 4, in part. Although the circuit court did not need to reach the

14

second *Foster* factor—that "other responsible causes, including the conduct of the plaintiff and third persons, are sufficiently eliminated by the evidence"—it is clear from our review of the appendix record that had the petitioners met the first *Foster* factor, they could not meet the second factor. *Id.* As Sahley argued, there could have been natural erosion in the eastern wall of the retention pond during the intervening years since its construction in 1999; Terlin may have disturbed the eastern wall of the pond, as discussed previously;[23] and, there may have been a failure in the maintenance or preservation of the retention pond by the HOA.[24] In short, the doctrine of *res ipsa loquitur* could not overcome the petitioners' lack of evidence to support their case. Consequently, we find no error in the circuit court's decision to grant summary judgment in favor of Sahley on the petitioners' negligence claim.

## B. Summary judgment in favor of the Sterners and WHR

The petitioners assert that genuine issues of fact exist as to their claims of breach of implied contract, negligence, fraud, and constructive fraud against the Sterners and

---

[23]The circuit court found in its summary judgment order that Terlin had buried pipes from the house and through the east wall of the retention pond. This was an allegation in Sahley's third-party complaint against Terlin against whom a default judgment was entered. *See* 10 *Moore's Federal Practice* § 55.32[l][a]&[b] (3rd ed.2008) (recognizing that a defaulting party admits factual basis of claims asserted against it).

[24]The November 2006 HOA meeting minutes cited by the petitioners state that "treet" might be placed around the "pit." These minutes provide support for Sahley's averment that the HOA had some responsibility for the common areas, including the retention ponds, prior to the April 2010 deed by which Sahley conveyed the common areas to the HOA. *See also, supra* note 8.

WHR. Relying upon *Thacker*[25] and *Lengyel*,[26] the petitioners argue that a jury should decide whether the Sterners and WHR acted reasonably in discharging their duty of accurate disclosure about the condition of the subject property. The petitioners also argue that they relied upon the Sterners' disclosure forms on which a box was checked "no" in response to the question of whether there were any encroachments. The Sterners argue that summary judgment was proper because the petitioners failed to produce any evidence of the alleged slip or their alleged damages.

As with Sahley, the foundation for all of the petitioners' claims against the Sterners and WHR was contingent upon the introduction of evidence demonstrating that there has been an actual slip in the retention pond that resulted in an encroachment upon their property. For the reasons discussed above, the petitioners failed to offer such evidence and, without such evidence, there can be no fraud, constructive fraud, or negligence in failing to

---

[25]In the syllabus of *Thacker*, we held, in part, that

> [w]here a vendor is aware of defects or conditions which substantially affect the value or habitability of the property and the existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection, then the vendor has a duty to disclose the same to the purchaser.

*Thacker*, 171 W.Va. at 110, 297 S.E.2d at 885.

[26]In *Lengyel*, we stated that "[a]n action for fraud may lie where the defendant either knows the statement to be false, makes the statement without knowledge as to its truth or falsity, or makes it under circumstances such that he should have known of its falsity." *Lengyel*, 167 W.Va. at 277, 280 S.E.2d at 69.

16

disclose an allegedly known defect, nor breach of an implied contract.[27] As the circuit court found, the petitioners "received the benefit of their bargain[;]" they visited the property prior to purchasing it; were aware of the adjacent retention pond; and claimed that the alleged "slip" occurred prior to their purchase of the property.[28]

Viewing the record in the light most favorable to the petitioners, we find that the petitioners failed to offer evidence by affidavit, or otherwise, which would support a finding on their claims against the Sterners and WHR under either *Thacker* or *Lengyel*.[29] Accordingly, we find no error in the circuit court's decision to grant summary judgment in favor of these respondents on the petitioners' claims against them.

---

[27]Although the circuit court does not specifically rely upon this failure in the petitioners' evidence in addressing their claims against the Sterners and WHR in its summary judgment order, "a grant of summary judgment may be sustained on any basis supported by the record. Thus, it is permissible for us to affirm the granting of summary judgment on bases different or grounds other than those relied upon by the circuit court." *Harper v. Smith*, __ W.Va. __, 753 S.E.2d 612, 617 (2012) (citing *Gentry v. Mangum, Inc.,* 195 W.Va. 512, 519, 466 S.E.2d 171, 178 (1995)).

[28]Even if we were to assume, *arguendo*, that the petitioners had evidence of a slip in the retention pond and a resultant encroachment, they still offered no affirmative evidence to support their fraud claims so as to contradict the Sterners' and WHR's denial of any knowledge of an alleged encroachment. Neighborhood rumors and unauthenticated and nonspecific HOA meeting minutes are conjectural and wholly insufficient to withstand summary judgment. *See Precision Coil*, 194 W.Va. 52, 459 S.E.2d 329.

[29]*See supra* notes 25 and 26.

## IV. Conclusion

For all of the foregoing reasons, this Court is of the opinion that, under the circumstances of this action, the circuit court acted properly in granting the respondents' motions for summary judgment. The Circuit Court of Putnam County's final order entered on January 8, 2013, is affirmed.

Affirmed.