# CHARLESTON.

C. R. PENIX *v.* No. 2 GAS COAL Co. *et al.*

(No. 5060)

Submitted October 21, 1925.   Decided June 2, 1925.

CASE OF McBEE *v.* DEUSENBERRY FOLLOWED AND APPLIED.

A case in which point 3 of the syllabus of the case of *McBee* v. *Deusenberry,* decided this term, is followed and applied, and the judgment of the lower court on the facts affirmed.

Appeal from Circuit Court, Kanawha County.

Suit by C. R. Penix against No. 2 Gas Coal Company *et al.* Judgment for plaintiff, and defendant appeals.

*Affirmed.*

*E. S. Bock* and *Ben Moore,* for appellees.

*J. F. Cork, J. W. Kennedy,* and *Donald L. Cork,* for appellants.

HATCHER, JUDGE:

This is a suit in chancery brought in the Court of Common Pleas of Kanawha County, wherein the plaintiff seeks an accounting from the defendant company, and from Tom L. Johnson and C. J. Van Fleet, joint defendants with the company, and a recovery from the defendants of a one-third share of profits derived from the sale of the property of the company to one E. M. Spangler. From a decree adjudging that the plaintiff was the owner of a one-fourth interest in the property and entitled to a one-fourth interest in the proceeds of the sale thereof, after payment of the debts of the company, and rendering judgment for the plaintiff against defendants Johnson and Van Fleet for $2,418.16, the balance due plaintiff on the amount determined by the court to be the one-fourth interest of the profits, Johnson and Van Fleet have brought the case here on appeal.

The evidence is so conflicting, indefinite, and lacking in details that it is impossible to properly determine from the

record just what took place between the parties in regard to some of the important matters in litigation. It seems that in the winter of 1920, defendant Johnson conceived the idea of obtaining a lease on a tract of coal land owned by a Mr. Wiley. Johnson states that he sent a man named Delaney to act as his agent and secure the lease. Delaney says that he was not acting as an agent, but was to be the owner of a one-half interest in the lease. Delaney also states that he put up one-half of the $187.00 which was paid on the lease as royalty. Delaney did not know the plaintiff, but says that Mr. Johnson at the time stated that a man named Penix, "or some such name as that, would come into the thing and take a third interest with us." Shortly afterwards, Delaney sold his interest in the lease, whatever it may have been, to V. T. Harrison. Harrison sold a portion of his interest to one Clyde Swinburn. What that interest was the record does not disclose, and later, Swinburn and Harrison sold their several interests, whatever they were, to defendant Van Fleet. The evidence does not show the interests which they purported to sell, neither does it show the interests which Van Fleet thought he was buying.

While negotiations were pending with Wiley, Johnson approached the plaintiff, and according to the plaintiff, arranged for Penix to have a one-third interest in the lease. Penix put up $529.00 in all for the one-third interest, as he understood it. Johnson denied that Penix was to have a one-third interest in the lease, but states he was to have $500.00 in the stock of the defendant corporation when the notes with which Penix had borrowed the $529.00 were paid. Shortly after securing the lease Johnson formed the defendant corporation, to which he assigned the lease. He had himself elected president, Penix vice-president, and Harrison secretary and treasurer. The capital stock was $10,000.00. No stock was ever issued to anyone as a stockholder. A certificate for $9,500.00 was made out in the name of Johnson, but it was for the sole purpose of being put up as collateral on a loan of money secured for the corporation. Johnson claimed that he personally was entitled to all

of the shares of the corporation, except five shares reserved for the plaintiff.

The company seems to have borrowed considerable money and to have been in bad financial straits for a while; but some time during the summer of 1920, it commenced to make money and pay dividends. Several dividends were paid in the following ratio: $150.00 to Van Fleet, $150.00 to Johnson, and $100.00 to Penix. In November of that fall, Johnson negotiated the sale of the property for $25,000.00. The plaintiff claims that Johnson told him he was selling the property for $7,000.00, and that the debts were about $4,000.00. Johnson left with the plaintiff a personal check for $1,000.00 as plaintiff's share of the profits. Johnson says that he made an outright purchase of plaintiff's interest in the corporation for the $1,000.00. He admits, however, that he did not propose to buy plaintiff's interest until after he had begun negotiations with the purchaser, and that he had the plaintiff postpone collecting the check therefor until after the purchase was consummated. Despite Johnson's assertion that he was entitled to all the stock in the company except the $500.00 to Penix, he admits that he treated Van Fleet as a half-owner of all the stock except the five shares. He makes no mention of Van Fleet's purchase of the Harrison and Swinburn interests, but purports to recognize Van Fleet's claim by reason of $400.00 which Van Fleet had loaned the company in the early and troublous days of its existence. Johnson claimed he put from $1,200.00 to $1,400.00 of his money into the company for which he had never been repaid. He stated these payments were made by check and promised to produce the checks, but did not do so. The court found that the indebtedness of the company at the time it was sold was $4,476.75. The balance of the $25,000.00, except the $1,000.00 to the plaintiff, seems to have been divided between Johnson and Van Fleet.

The trial court wrote a very comprehensive and careful opinion, setting forth the impossibility of determining from the record just what the understanding was between the parties. This opinion finds that Johnson, as the sole manager

of the corporation, perpetrated a fraud on the plaintiff as a stockholder thereof in not disclosing to him the negotiations with Spangler at the time the $1,000.00 check was left with plaintiff. The opinion bases its finding that plaintiff is entitled to a one-fourth interest in the net profits of the sale of the property on the ratio upon which dividends were issued at the direction of Johnson. In determining the interests of the parties, the lower court merely followed a rule long recognized and approved by this court, to-wit, that in case of doubt and ambiguity in the terms of a contract, a court would follow the interpretation placed thereon by the parties themselves. See *Summit Coal Co.* v. *Raleigh Smokeless Fuel Co.,* decided by this court April 21, 1925.

The brief of counsel for the appellants presents no propositions of law in opposition to the decree of the court but bases its claim of error on the evidence. We have held in many cases that where the evidence was conflicting and we could not see therefrom that the decision of the circuit court was clearly wrong its judgment would not be disturbed. See *McBee* v. *Deusenberry* (and cases there cited), decided by this court May 19, 1925.

Perceiving no error in the judgment of the lower court, it is affirmed.

*Affirmed.*