297 S.E.2d 885

**Edwin G. THACKER, et al.**

v.

**Melvin L. TYREE, et al.**

No. 15232.

Supreme Court of Appeals of West Virginia.

Nov. 19, 1982.

James Allan Colburn, Helen M. Morris, Baer, Napier & Colburn, Huntington, for appellants.

James M. Robinson, Huntington, for appellees.

MILLER, Chief Justice:

purchaser for damages arising from substantial latent defects in a home. Specifically, the inquiry is whether the vendor, who knows of facts which substantially affect the value of the property and also knows that such facts are not known to or would not be known to the purchaser as a result of diligent attention on the part of the purchaser, has a duty to disclose them to the purchaser. The trial court held, apparently based on the doctrine of *caveat emptor*, that the vendor was not liable and granted a summary judgment in the vendor's favor. We reverse.

In 1978, the appellants, the Thackers, bought a house from the appellees, the Tyrees. In his pretrial deposition, Melvin Tyree stated that he had built the home in 1975 and that he and his wife had lived there until they sold it to the Thackers in 1978. Mr. Tyree was apparently in the business of constructing new homes, living in them for a few years, and then selling them. He estimated that between 1971 and 1978, he had built, lived in, and sold three such homes.

After the Tyrees moved into the house, major problems developed with the foundation of the home. The walls of the house cracked, part of the basement wall collapsed, and window sills came loose. These problems were diagnosed as being caused by water under the footers. In an attempt to correct the problem, Mr. Tyree built a drain and a retaining wall between the drain and the house. According to Mr. Tyree, only a small crack remained in one wall of the house after the repairs, and they experienced no further trouble with the house. He stated that upon the sale of the house to the Thackers they had asked nothing about the condition of the house and consequently he had made no disclosures.

The Thackers claimed that after they bought the house and moved in, various problems developed which ultimately resulted in cracked walls and foundation problems. It is asserted that part of the house's foundation was constructed on filled ground which caused slippage or settlement thus causing considerable cracking in the walls to the point that the house could not be safely occupied. The Thackers filed a complaint charging the Tyrees with fraudulent concealment of a latent defect of which the Tyrees had knowledge.

The Tyrees filed a motion for a summary judgment pointing out that the Thackers had never asked even a general question as to the quality of the house and that no representations were made by them in this regard. The motion was granted. It is important to note that the summary judgment was based on a legal proposition to the effect that even if there was a fraudulent concealment this would not give rise to a cause of action. Because summary judgment was granted, the factual record is meager and we do not pass upon the ultimate factual sufficiency of the case. We address only whether a cause of action exists.

The doctrine of *caveat emptor*[1] was never an absolute bar to a lawsuit between a vendor and a purchaser of real property in this jurisdiction. We recently stated in *Lengyel v. Lint*, 167 W.Va. 272, 280 S.E.2d 66, 69 (1981): "It has long been the law in West Virginia that a vendor of real property may be liable to the vendee in an action for fraud. *Averill v. Boyer*, 76 W.Va. 642, 87 S.E. 259 (1915); *Stout v. Martin*, 87 W.Va. 1, 104 S.E. 157 (1920)." In *Lengyel*, suit had been brought to set aside the sale of a house based on a claim of fraudulent misrepresentation with regard to the quality and type of house and the size of the lot. The plaintiff's complaint had been dismissed by way of a summary judgment. We held that there were sufficient factual issues to militate against the summary judgment. In *Penix v. No. 2 Gas Coal Co.*, 99 W.Va. 310, 129 S.E. 127 (1925), and *McBee v. Deusenberry*, 99 W.Va. 176, 128 S.E. 378 (1925), we permitted recissions of real estate sales based on the fact that the vendors had falsely

---

1. The classic work on the history of the doctrine is Hamilton, The Ancient Maxim Caveat Emptor, 40 Yale L.J. 1133 (1931), which traces its origin to the ascendency of the mercantile class in England in the Eighteenth Century.

represented the amounts they had paid for the properties.

In fact, the doctrine of *caveat emptor* has not received much attention in our case law. We have discussed it in the context of a judicial sale. *E.g., Headley v. Hoopengarner,* 60 W.Va. 626, 55 S.E. 744 (1906). Whatever its former status in the law of sales, the Uniform Commercial Code, by its implied warranty of merchantability and fitness found in W.Va.Code, 46–2–314 and 315, has virtually abolished the doctrine in the sale of goods.[2] *See also Nettles v. Imperial Distributor, Inc.,* 152 W.Va. 9, 159 S.E.2d 206 (1968).

In the area of construction contracts, *caveat emptor* ordinarily does not apply, as there is general recognition that an implied warranty of fitness and workmanlike quality attaches to such contracts, as stated in 3A Michie's Jurisprudence *Building Contracts* § 4 (1976):

"In building and construction contracts it is implied that the building shall be erected in a reasonably good and workmanlike manner and when completed shall be reasonably fit for the intended purpose. Ordinarily a person undertaking a particular work impliedly agrees to exercise a degree of skill equal to the undertaking. So, in case a person holds himself out as specially qualified to perform work of a particular character there is an implied warranty that the work which he undertakes shall be of proper workmanship and reasonable fitness for its intended use."

*See also* Syllabus Point 5, *Southern Erectors, Inc. v. Olga Coal Co.,* 159 W.Va. 385, 223 S.E.2d 46 (1976); *cf. W. Bateson & Co. v. Baldwin Forging & Tool Co.,* 75 W.Va.

574, 84 S.E. 887 (1915); 17A C.J.S. *Contracts* § 329 (1963).

We have not had occasion to directly consider whether the nondisclosure of a material latent defect not known or discoverable by the exercise of diligence on the part of the purchaser constitutes fraud. A substantial majority of courts that have considered this question have answered it in the affirmative. In *Cohen v. Vivian,* 141 Colo. 443, 448, 349 P.2d 366, 368, 80 A.L.R.2d 1448, 1452 (1960), the court expressed this view:

"Other cases which hold that a vendee has a right of action against a vendor on the basis of a concealment because of a latent defect known to the vendor and unknown to the vendee, the existence of which would materially affect the desirability of the property, are: *Rothstein v. Janss Inv. Corp.,* 45 Cal.App.(2d) 64, 113 P.(2d) 465 (involving a structure built on filled ground); *Barrie v. Abate,* 209 Md 578, 121 A.(2d) 862; *Gilbert Const. Co. v. Gross,* 212 Md. 402, 129 A.(2d) 518."

In *Lingsch v. Savage,* 213 Cal.App.2d 729, 735, 29 Cal.Rptr. 201, 204, 8 A.L.R.3d 537, 543 (1963), the court stated:

"It is now settled in California that where the seller knows of facts materially affecting the value or desirability of the property which are known or accessible only to him and also knows that such facts are not known to, or within the reach of the diligent attention and observation of the buyer, the seller is under a duty to disclose them to the buyer."

Several courts have cited the general rule, which is found in 37 Am.Jur.2d *Fraud and Deceit* § 158 (1968), and 37 C.J.S. *Fraud*

---

2. Many courts have concluded that as to the builder-vendor of a home there is an implied warranty of fitness or habitability in connection with the sale of a home and have thereby excluded the applicability of the doctrine of *caveat emptor* to such sales. *E.g., Wawak v. Stewart,* 247 Ark. 1093, 449 S.W.2d 922 (1970); *Pollard v. Saxe & Yolles Dev. Co.,* 12 Cal.3d 374, 525 P.2d 88, 115 Cal.Rptr. 648 (1974); *Carpenter v. Donohoe,* 154 Colo. 78, 388 P.2d 399 (1964); *Bethlahmy v. Bechtel,* 91 Idaho 55, 415 P.2d 698 (1966); *Petersen v. Hubschman Construction Co., Inc.,* 76 Ill.2d 31, 27 Ill.Dec. 746, 389 N.E.2d 1154 (1979); *Crawley v. Terhune,* 437 S.W.2d 743 (Ky.1969); *Banville v. Huckins,* 407 A.2d 294 (Me.1979);

*McDonald v. Mianecki,* 79 N.J. 257, 398 A.2d 1283 (1979); *Schipper v. Levitt & Sons, Inc.,* 44 N.J. 70, 207 A.2d 314 (1965); *Hartley v. Ballou,* 20 N.C.App. 493, 201 S.E.2d 712 (1974), rev'd on other grounds, 286 N.C. 51, 209 S.E.2d 776; *Jeanguneat v. Jackie Hames Constr. Co.,* 576 P.2d 761 (Okl.1978); *Yepsen v. Burgess,* 269 Ore. 635, 525 P.2d 1019 (1974); *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972); *Lane v. Trenholm Bldg. Co.,* 267 S.C. 497, 229 S.E.2d 728 (1976); *Waggoner v. Midwestern Dev., Inc.,* 83 S.D. 57, 154 N.W.2d 803 (1967); *Klos v. Gockel,* 87 Wash.2d 567, 554 P.2d 1349 (1976). However, this theory is not asserted in this case.

§ 16(b) (1943),[3] that where the vendor has knowledge of concealed or latent conditions that are not within the knowledge of the purchaser or could not be discovered by reasonable diligence, there is a duty to disclose and the failure to do so will constitute evidence of fraud. *E.g., Jenkins v. McCormick,* 184 Kan. 842, 339 P.2d 8 (1958); *Brooks v. Ervin Construction Co.,* 253 N.C. 214, 116 S.E.2d 454 (1960).

In a case involving fraudulent concealment of roach infestation of a house, the New Jersey Supreme Court made an extensive review of the law in this area and concluded that the modern view was that concealment of a substantial defect or condition which the purchaser could not by reasonable inspection discover amounted to fraud. *Weintraub v. Krobatsch,* 64 N.J. 445, 317 A.2d 68 (1974).[4]

The Virginia court has recently held in *Ware v. Scott,* 220 Va. 317, 257 S.E.2d 855 (1979), that the failure of the vendor to reveal that the house had been subject to flooding after the sales contract was signed was a sufficient misrepresentation to enable the purchaser to recover damages in an action based on fraud.

We have, in several earlier cases, recognized the general principle that an action for fraud can arise by the concealment of truth. In *Frazer v. Brewer,* 52 W.Va. 306, 310, 43 S.E. 110, 111 (1902), which involved the sale of corporate stock, we stated: "Fraud is the concealment of truth, just as

much as it is the utterance of a falsehood." In *Carney v. Harbert,* 44 W.Va. 30, 28 S.E. 712 (1897), we concluded that the vendor was guilty of fraud where he had contracted to sell 300 acres of coal but conveyed 100 acres to his children before deeding the coal to the purchaser. In Syllabus Point 6, in part, of *Crislip v. Cain,* 19 W.Va. 438, 441 (1882), we stated: "Fraud is usually shown by either establishing a *suggestio falsi* [false representation] or a *suppresso veri* [concealment of truth]." *See also Norfolk & W. R. Co. v. Perdue,* 40 W.Va. 442, 21 S.E. 755 (1895).

Consequently, we conclude that where a vendor is aware of defects or conditions which substantially affect the value or habitability of the property and the existence of which are unknown to the purchaser and would not be disclosed by a reasonably diligent inspection, then the vendor has a duty to disclose the same to the purchaser. His failure to disclose will give rise to a cause of action in favor of the purchaser. As earlier stated, we express no view as to the ultimate outcome but merely hold that the plaintiff's case could not be dismissed as a matter of law on summary judgment based on the doctrine of *caveat emptor.*

Reversed.

3. The applicable portion of 37 Am.Jur.2d *Fraud and Deceit* § 158 (1968), is:

"The general rule, with some authority to the contrary, is that when there exists in the property which is the subject of a sale latent defects or hidden conditions not discoverable on a reasonable examination of the property, the seller, if he has knowledge thereof, is bound to disclose such latent defects or conditions to the buyer, and his failure to do so may be made the basis of a charge of fraud." (Footnotes omitted)

The pertinent portion of 37 C.J.S. *Fraud* § 16(b) (1943), is: "If the fact concealed is peculiarly within the knowledge of one party and of such a nature that the other party is justified in assuming its nonexistence, there is a duty of disclosure, and deliberate suppression of such fact is fraud." (Footnote omitted)

4. *Weintraub v. Krobatsch, supra,* cited among other authorities these cases: *Obde v. Schlemey-*

er, 56 Wash.2d 449, 353 P.2d 672 (1960); *Loghry v. Capel,* 257 Iowa 285, 132 N.W.2d 417 (1965); *Williams v. Benson,* 3 Mich.App. 9, 141 N.W.2d 650 (1966); *Sorrell v. Young,* 6 Wash.App. 220, 491 P.2d 1312 (1971); *Lawson v. Citizens & Southern National Bank of S.C.,* 259 S.C. 477, 193 S.E.2d 124 (1972); *Clauser v. Taylor,* 44 Cal.App.2d 453, 112 P.2d 661 (1941); *Simmons v. Evans,* 185 Tenn. 282, 206 S.W.2d 295 (1947); *Piazzini v. Jessup,* 153 Cal.App.2d 58, 314 P.2d 196 (1957); *Rich v. Rankl,* 6 Conn.Cir.Ct. 185, 269 A.2d 84, 88 (1969); *Ford v. Broussard,* 248 So.2d 629 (La.App.1971); and these commentators: 12 Williston, Contracts § 1498 (3d ed. 1970); Prosser, Torts 695–99 (4th ed. 1971); Keeton, "Fraud—Concealment and Non-Disclosure," 15 Tex.L.Rev. 1 (1936); Goldfarb, "Fraud and Nondisclosure in the Vendor-Purchaser Relation," 8 Wes.Res.L.Rev. 5 (1956).