IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

2023 Fall Term

_____

No. 22-ICA-249

_____

FILED

November 15, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

DAVID G. MAHER AND
AMY C. MAHER,
Plaintiffs Below, Petitioners,

v.

CAMP 4 CONDOMINIUM ASSOCIATION, INC.,
Defendant Below, Respondent.

_____

Appeal from the Circuit Court of Pocahontas County
The Honorable Jennifer P. Dent, Judge
Civil Action No. CC-38-2015-C-55

AFFIRMED

_____

Submitted: October 10, 2023
Filed: November 15, 2023

J. David Judy, III, Esq.
Aaron M. Judy, Esq.
Judy & Judy, Attorneys at Law
Moorefield, West Virginia
Counsel for Petitioners

Melvin F. O'Brien, Esq.
Aaron M. Ponzo, Esq.
Michelle D. Baldwin, Esq.
Dickie, McCamey & Chilcote, L.C.
Wheeling, West Virginia

Robert C. Chenoweth, Esq.
Busch, Zurbuch & Thompson, PLLC
Elkins, West Virginia
Counsel for Respondent Camp 4
Condominium Association, Inc.

JUDGE LORENSEN delivered the Opinion of the Court.

LORENSEN, Judge:

Petitioners David and Amy Maher, appeal the Circuit Court of Pocahontas County's October 19, 2022, order granting summary judgment in favor of Camp 4 Condominium Association, Inc. (the "Association").[1] The circuit court found that the Association owed no duty to disclose latent defects in a condominium the Mahers purchased in 2007. The circuit court further determined that the gist of the action doctrine bars the Mahers' claims of negligence and fraud against the Association, and that the remedies available to the Mahers did not include consequential or special monetary damages.

After careful review of the briefs, the appendix record, the arguments of the parties, and the applicable legal authority, we agree with the circuit court and therefore affirm its entry of summary judgment.

## I.    FACTUAL AND PROCEDURAL HISTORY

In 2007, the Mahers purchased Unit 27 of the Camp 4 common interest community in Snowshoe, West Virginia from Oswald and Geraldine Zeringue.

---

[1] The circuit court certified its order pursuant to Rule 54(b) of the West Virginia Rules of Civil Procedure. Rule 54(b) permits a circuit court to enter final judgment as to one or more but fewer than all of a party's claims upon an express determination that there is no just reason for delay. According to the circuit court's order, certain other claims remain pending against the Association.

Approximately seven (7) years after the sale, the Mahers discovered latent defects in the condominium. As a result, the Mahers brought this civil action against the Zeringues, the Association, and other named defendants, alleging breach contract, breach of statutory and common law duties, negligence, fraud, and civil conspiracy. The circuit court's October 19, 2022, order addresses, among other things, the causes of actions brought against the Association which allege it failed to disclose construction defects prior to the Mahers' purchase of the condominium, fraud and negligence tort claims for the time period subsequent to their purchase of the condominium, and whether the Mahers can recover monetary damages for the Association's failure to repair common elements. The Mahers' appeal is limited to the circuit court's findings with respect to the Association.

The Association is governed by the Uniform Common Interest Ownership Act (the "Uniform Act"), found in Chapter 36B of the West Virginia Code. Under the Uniform Act, each common interest community is managed by a unit owners' association governed by a board of directors subject to a declaration. A declaration is a document that, when properly recorded, establishes the common interest community and outlines the community's common elements, use restrictions, maintenance requirements, and other rules governing a unit owners' association and its members. When a condominium unit subject to a unit owners' association is purchased, the new unit owner becomes contractually bound to the declaration and subject the unit owners' association's management.

2

Under the Uniform Act, if a member of the unit owners' association intends to sell their unit, the owner must disclose to the prospective buyer (prior to purchase) a copy of the unit owners' association bylaws, its declaration, its rules and regulations, and a resale certificate. A resale certificate is a document which must be completed by the unit owners' association for the owner (seller) within ten (10) days of a request. West Virginia Code § 36B-4-109 (1986) outlines fourteen (14) topics a resale certificate is required to address. Most of the resale certificate disclosures are financial, such as the unit owners' association's operating budget, monthly common expenses, any unpaid assessments owed by the seller, future capital expenditures, the status of any legal proceedings against the unit owners' association, and insurance information.

However, not all the information required in a resale certificate is financial. Section 36B-4-109(10) states that a resale certificate must disclose to the seller "[a] statement as to whether the executive board has knowledge that any alterations or improvements to the unit or the limited common elements . . . violate any provisions of the declaration;" and section 36B-4-109(11) requires "[a] statement as to whether the executive board has knowledge of any violations of the health and safety codes with respect to the unit, the limited common elements . . . or any other portion of the common interest community." Pursuant to West Virginia Code § 36B-4-109(b), a unit seller who provides a valid certificate of resale is immunized from liability associated with the information disclosed on the resale certificate.

The Mahers purchased Unit 27 from the Zeringues on November 16, 2007. Approximately seven (7) years later, on January 8 or 9, 2015, Unit 27 experienced a freeze event which caused sprinkler system pipes to burst within the unit, producing substantial property damage. The Mahers allege they had no notice of freeze events in Unit 27 or any other unit within the common interest community prior to their sprinkler pipes freezing in 2015. After the 2015 freeze event, the Mahers and the Association each alleged the other was responsible for the damages to Unit 27. As a result, the Mahers hired construction and engineering experts who discovered that Unit 27, and other units within the common interest community, experienced sprinkler system freezes prior to the Mahers' November 16, 2007, purchase of the condominium unit. According to the record, in 2004 and 2005 the Association hired construction and architectural experts who identified the potential causes of freezing sprinkler systems and gave suggestions to limit future freezing events.[2] The complaint alleges that prior to and at the time of sale, the Zeringues and the Association had actual knowledge of construction defects within Unit 27, including defects that could cause water lines to freeze and burst.

The Mahers' complaint alleges that the Association is guilty of breaches of contract and breaches of statutory and common law duties for failing to disclose known material defects of Unit 27 prior to and after the purchase. The Mahers also alleged the Association was negligent by failing to mitigate and repair defects known to the

---

[2] The Mahers' investigation also uncovered alleged construction defects unrelated to those which caused the pipes to freeze.

Association as early as 2005, and that the Association was negligent and engaged in fraud and a civil conspiracy with other defendants to conceal the latent defects of Unit 27. The Mahers demanded compensation, including monetary, general, and punitive damages.[3] After the complaint was filed, extensive discovery took place.

Eventually, the Association filed a motion for summary judgment, alleging that it owed the Mahers no legal duty to disclose defects prior to their purchase of Unit 27, and that the Mahers' fraud and negligence allegations should be dismissed pursuant to the gist of the action doctrine because those counts are grounded in alleged breaches of contract. The Association also argued that its declaration does not allow monetary relief as a remedy against the Association.

The circuit court agreed with the Association that it did not fraudulently conceal latent defects from the Mahers prior to the sale of Unit 27. The circuit court ruled that the Association owed no contractual duty to disclose defects to the Mahers because it was not a party to the contract between the Mahers and the Zeringues, and that any contractual relationship between the Association and the Mahers began after they purchased the condominium unit. The circuit court also found that the Association did not owe a common law duty to disclose latent defects prior to or at the time of sale because

---

[3] The record on appeal contains an August 27, 2015 email in which the Mahers demanded that the Association cease and desist all repairs.

common law only imposes a duty on sellers, and the Association was not the seller of Unit 27.

Furthermore, the circuit court determined that the Association owed no statutory duty to disclose construction defects in the resale certificate because the Association's duty to furnish the information contained in the resale certificate is to the seller and not a purchaser. The circuit court noted that even if the resale certificate imposed a statutory duty on the Association towards a purchaser, the Mahers produced no evidence showing that any member of the Association's board of directors knew of any health or building code violations prior to the sale. The circuit court further determined that the requirement for resale certificates to include violations of health or building codes is limited to violations for which a citation was issued by a regulatory or law enforcement agency, and that the Mahers produced no evidence of citations for health or building code violations having been issued against the Association prior to the Mahers' purchase. The circuit court determined that the information provided in resale certificates is limited to the specific requirements imposed by the Uniform Act, and that health and building code violations do not include alleged general design and construction defects.

The circuit court also addressed the Mahers' tort allegations of fraud and negligence for the time period after they purchased the condominium. The circuit court stated that the Mahers' fraud and negligence claims were inextricably intertwined with their contract claims, and that the fraud and negligence claims were basically contract

6

claims rehashed as torts. As a result, the circuit court determined that the Mahers' after the sale claims of fraud and negligence were precluded by the gist of the action doctrine that bars tort claims which arise out of a contract dispute.

The circuit court deferred a ruling on the Association's motion for summary judgment with respect to the Mahers' charge of civil conspiracy, but it agreed with the Association that its declaration prohibits claims for special and consequential monetary damages in suits alleging the Association failed to repair common elements of the condominium. However, the circuit court ruled that the Mahers' could pursue injunctive relief and punitive damages against the Association. Finally, the circuit court's order addresses claims brought against insurance companies and members of the Association's board of directors in their individual capacity. The circuit court dismissed claims against the insurance companies and granted the Association's request for an order finding that members of the board of directors cannot be held liable in their individual capacity. It is from the circuit court's October 19, 2022, order that the Mahers appeal to this Court.

## II.    STANDARD OF REVIEW

"A circuit court's entry of summary judgment is reviewed *de novo*." Syl. Pt. 1, *Painter v. Peavy*, 192 W. Va. 189, 451 S.E.2d 755 (1994). A motion for summary judgment should be granted only when it is clear that there is no genuine issue of fact to be tried and inquiry concerning the facts is not desirable to clarify the application of law." *Id.* at Syl. Pt. 2. Moreover, "[s]ummary judgment is appropriate if, from the totality of the

7

evidence presented, the record could not lead a rational trier of fact to find for the nonmoving party, such as where the nonmoving party has failed to make a sufficient showing on an essential element of the case that it has the burden to prove." Syl. Pt. 2, *Williams v. Precision Coil Inc.*, 194 W. Va. 52, 459 S.E.2d 329 (1995).

## III.    DISCUSSION

On appeal, the Mahers list five (5) assignments of error: 1) the circuit court erred when it dismissed the monetary damage claims against the Association; 2) the circuit court erred when it found that the Association owed no statutory duty to prospective purchasers; 3) the circuit court erred when it determined that a violation of a health or safety code means an offense for which a citation was issued; 4) the circuit court erred when it found that the gist of the action doctrine precludes negligence and fraud claims; and 5) the circuit court erred when it found that the Association "did not breach any statutory, contractual, or common law duties owed to [the Mahers] by [the Association] prior to and at the time of purchase of Unit 27. . . ;[4] from purchase in 2007 until the

---

[4] The circuit court ruled that the Association owed no statutory, contractual, or common law duties to the Mahers prior to the purchase. To the extent the Mahers argue that the circuit court erred when it found that the Association did not breach a duty prior to the purchase of the condominium unit, we presume the Mahers are actually arguing that the circuit court erred when it ruled that the Association owed no duties prior to the purchase.

freeze event of January, 2015; and following the freeze event of January, 2015."[5] We

address the Mahers' assignments of error in our own sequence.

### A. Statutory Duty; Health and Building Code Violations

As an initial matter, we observe that the Mahers cite numerous statutes in their

arguments before this Court. However, we note that the Mahers alleged no specific

statutory violations in Counts I, II, III, and IV in the amended complaint that are the subject

of this appeal. We will address the statutes as discussed in the circuit court's order, but we

decline to address alleged statutory discussions not made by the circuit court.

The circuit court determined that the Association did not owe a statutory duty

to disclose latent defects in the resale certificate. The Mahers cite West Virginia Code §

36B-4-109, the resale certificate provision described above, for their position that the

Association owed a duty to disclose defects prior to the sale. Most pertinent to this case,

are section 36B-4-109(a)(10) and (11) which require the resale certificate to disclose any

known alterations or improvements to the unit or common elements which violate the

provisions of the Association's declaration and any known violations of health and building

codes with respect to the unit, the Association's limited common elements, or any other

---

[5] The only after sale causes of action implicated in the Mahers' assignments of error are the circuit court's rulings with respect to negligence and fraud. We will not expand our analysis to other after the sale claims.

9

portion of its common interest community. Section 36B-4-109(a)(10) and (11) and the remaining subsections of 36B-4-109 do not state that a resale certificate must disclose general construction defects.

The Mahers argue that resale certificates create a duty on unit owners' associations towards prospective purchasers. However, the circuit court correctly found that the disclosure requirements outlined in section 36B-4-109(a) are to the sellers of units and not purchasers. Therefore, the Association owed no pre-sale duties to the Mahers under section 36B-4-109. Section 36B-4-109(b) requires a unit owners' association to furnish the *seller* a resale certificate within ten (10) days after a request, and section 36B-4-109(a) requires the seller to provide the resale certificate to the buyer. Section 36B-4-109 does not contain language requiring a unit owners' association to provide this information to a purchaser. In other words, section 36B-4-109 does not impose a duty on a unit owners' association to provide information to a purchaser.[6]

Further, the Mahers fail to direct us to specific health or building codes that the Association allegedly violated, and they presented no names of Association directors who they allege had knowledge of any violations of a specific applicable health or building

---

[6] Section 36B-4-109(b) also immunizes sellers from liability if a resale certificate contains inaccurate information, and section 36B-4-109(c) provides limited remedies to buyers if a resale certificate is inaccurate. Section 36B-4-109(c) states that a purchaser is not liable for unpaid assessments or fees which are greater than the amounts set forth in a resale certificate.

code.[7]   In fact, the appendix record contains a letter dated July 27, 2010—over two and a half years after the purchase, from an employee of the Association, suggesting the Association only then recently discovered that its buildings were in need of repair to address a fire code concern. Without evidence of specific code or declaration violations, the circuit court properly found no merit to the Mahers' claim that the Association violated a statutory duty it owed prior to the Mahers' purchase of the unit pursuant to section 36B-4-109.

Alternatively, the Mahers argue that "[t]he Sale Contract and the Agreement to Purchase Unit 27 . . . created the statutory duty of [the Association] under W.Va. Code § 36B-4-109 for disclosure which is also bound within the Deed of Conveyance for Unit 27 which expressly includes the provisions of the West Virginia Common Interest Ownership Act for 'protection of purchasers' under Article 4 of Chapter 36B. Clearly, 'construction defects' are synonymous with building and health and safety code

_____

[7] The Mahers arguments to this Court make numerous general references to hundreds of pages of pleadings and exhibits in the appendix record and claim that specific health and building code violations and the names of Association directors who knowingly concealed the violations can be ascertained within the record. The Mahers then direct this Court to read the entire record to determine the health and building codes the Mahers allege were violated and the names of individuals they claim concealed the violations. The Mahers place great emphasis on alleged health and building code violations when arguing that the Association violated section 36B-4-109; however, if there were health and building code violations or individuals who knowingly concealed known code violations, it is of paramount importance that the Mahers specifically cite the alleged code violations and name the individuals in their arguments. *See* Rule 10(c)(4) and (7) of the W. Va. Rules of App. Proc.

violations." However, the Mahers cite no statutory authority or case law applying the Uniform Act for this assertion. As a result, we decline to address legal plausibility of this statement.[8]

The Mahers also allege that the circuit court erred when it determined that the health and building code violations referenced in section 36B-4-109(11) must be charged offenses to trigger a disclosure requirement on a certificate of resale. However, we find that the circuit court correctly determined that for the purposes of 36B-4-109(a), a building or health code violation is one in which a citation or notice was issued by a regulatory agency. To rule otherwise would create significant ambiguities and leave unit owners' associations in an untenable position of speculating whether a unit may or may not have unspecified code violations or, taking the Mahers position to an extreme, requiring unit owners' associations to perform their own inspections for each sale.

The circuit court also addressed the Mahers' argument that West Virginia Code sections 36B-1-111 (1986) and 36B-1-113 (1986), when read together, require unit owners' associations to disclose latent defects when they issue resale certificates pursuant to section 36B-4-109. The circuit court's reasoning with respect to this issue is correct.

---

[8] "Although we liberally construe briefs in determining issues presented for review, issues which are ... mentioned only in passing but are not supported with pertinent authority, are not considered on appeal.'" *State v. LaRock,* 196 W. Va. 294, 302, 470 S.E.2d 613, 621 (1996).

Section 36B-1-111 addresses unconscionable contracts. However, this statute is inapplicable because, as is discussed below, there was no contractual relationship between the Association and the Mahers when the resale certificate was issued. West Virginia Code § 36B-1-113 requires remedies to be liberally construed so as to place an aggrieved party in as good a position had the other party fully performed its obligations. As the circuit court noted, the Association did not violate § 36B-4-109 when it issued the resale certificate; therefore, the Mahers cannot claim any remedies based on a statute that was not violated. Finally, the Mahers are asking this Court to read into § 36B-4-109 additional disclosures that are not contemplated in the Uniform Act. Section 36B-4-109 does not require disclosure of latent defects by unit owners' associations, and we decline to impose additional pre-purchase disclosure requirements upon unit owners' associations beyond those enumerated in the Uniform Act.

### B. Common Law Duty

The Mahers also contend the circuit court erred when it ruled that the Association did not owe them a common law duty to disclose construction defects prior to their purchase of Unit 27. On appeal, the Mahers do not cite any legal authority supporting this assignment of error.

We find no West Virginia precedent on this matter. Other jurisdictions do not require unit owners' associations to disclose latent defects in a unit to purchasers. In

13

*Smith v. Aramark Corp.*, Nos. 13-11-00500, 13-11-00708, 2014 WL 12714767 (Tex. Ct. App. 2014), the Texas Court of Appeals held that a unit owners' association does not owe a duty to disclose the existence of latent defects to a purchaser. Likewise, the California Court of Appeals, in *Kovich v. Paseo Del Mar Homeowners Association*, 48 Cal.Rptr.2d 758 (Cal. Ct. App. 1996), held that a homeowners' association does not owe a duty to disclose construction defects to a prospective purchaser. *Kovich*, 48 Cal.Rptr.2d at 758. The *Kovich* court explained that *sellers* have duties to disclose latent defects to purchasers, and that:

> [s]uch a disclosure requirement would impose an unreasonable burden on homeowners' associations and require [them] to incur substantial costs to assemble the information, make a timely disclosure, and monitor all potential sales in the common interest development. The insurance costs would be enormous and subject it to a host of claims by disgruntled purchasers. Those costs would be passed on to homeowners' association members, undermine the fiduciary duties owed by a homeowners' association board of directors, and subject a homeowners' association to new theories of liability.

*Kovich*, 48 Cal.Rptr.2d at 762.

We agree with the reasoning articulated in *Kovich*. Unit owners' associations govern common interest communities and maintain their common elements. They are not sellers of homes or units. Accordingly, we affirm the circuit court's ruling that no such common law duty was owed by the Association to the Mahers.

14

### C. Contractual Duty

The Mahers also argue that the circuit court erred when it ruled that the Association did not owe them a contractual duty to disclose construction defects prior to their purchase of Unit 27. This assignment of error is easily dispensed. The Association did not owe a contractual duty to the Mahers because it was not a party to the Mahers' and Zeringues' sale contract. In other words, there was no privity of contract between the Mahers and the Association until after the Mahers purchased the condominium. Only after the Mahers purchased Unit 27 did contractual obligations arise between the Mahers and the Association. As a result, the Mahers cannot maintain a breach of contract action for the time period prior to the purchase of Unit 27.

### D. Gist of the Action

Having established that the Association owed no statutory, common law, or contractual duties to disclose construction defects to the Mahers prior to their purchase of the condominium, we now turn to the circuit court's ruling that the Mahers' claims of fraud and negligence for the time period after they purchased the condominium were precluded by the gist of the action doctrine. The Mahers argue that the gist of the action doctrine does not apply and emphasize that its application substantially reduces the remedies to which they are entitled.

The gist of the action doctrine bars tort actions which are premised on a breach of contract. "[U]nder the 'gist of the action' doctrine, a tort claim arising from a

breach of contract may be pursued only if the action in tort would arise independent of the existence of the contract." *Gaddy Engineering Co. v. Bowles Rice McDavid Graff & Love*, 231 W. Va. 577, 586, 746 S.E.2d 586, 577 (2013) (quoting *Star v. Rosenthal*, 884 F. Supp.2d 319, 328-329 (2013)). "Whether a tort claim can coexist with a contract claim is determined by examining whether the parties' obligations are defined by the terms of the contract." *Tri-State Petroleum Corp., v. Coyne*, 240 W. Va. 542, 555, 814 S.E.2d 205, 218 (2018) (quoting *Gaddy*, 231 W. Va. at 586, 746 S.E.2d at 577). *Tri-State Petroleum* and *Gaddy* enumerate four (4) instances when the gist of the action doctrine would preclude a concurrent tort claim:

> (1) where liability arises solely from the contractual relationship between the parties; (2) when the alleged duties breached were grounded in the contract itself; (3) where any liability stems from the contract; and (4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim.

*Tri-State Petroleum* at 240 W. Va. at 555, 814 S.E.2d at 218 (quoting *Gaddy,* 231 W. Va. at 586, 746 S.E.2d, at 577).

The circuit court determined that the Mahers' negligence and fraud claims are "inextricably intertwined" with their breach of contract claims and, therefore, barred under the gist of the action doctrine. We agree that the Mahers' negligence and fraud claims stem from the Association's contractual obligations outlined in its declaration. For instance, Count II of the amended complaint alleges the Association breached numerous declaration obligations, such as a failure to maintain and repair the common elements and

16

the physical structure of the condominium, including the water lines; failure to notify unit owners that foyer heaters were necessary to keep the sprinkler lines from freezing; modification of the heaters without notice to the unit owners; concealment of defects; and failure to enforce the rights of unit owners by allowing the statute of limitations to expire against the architects and developers of the common interest community. The Mahers cite to specific language within the declaration when making these allegations. They also request damages for loss of rents and profits, personal property damages, loss of use, annoyance and inconvenience, mental distress, costs, and attorney fees.

Similarly, the Mahers' negligence theory (Count III) alleges the Association failed to mitigate and repair defects, allowed the statute of limitations to expire, failed to notify the Mahers of defects, and concealed said defects. The Mahers refer to the declaration in this section. Furthermore, the Mahers' fraud claim (Count IV) alleges the Association violated its contractual obligations to disclose, mitigate, and repair defects. The Mahers also request essentially the same damages as those requested in their breach of contract allegations: Loss of use, loss of rents and profits, personal property damages, annoyance and inconvenience, and emotional distress. The similarities between the Mahers' contract claims and their claims alleging negligence and fraud demonstrate the claims are inextricable intertwined.

In summary, a gist of the action analysis requires this Court to determine whether the allegations of negligence and fraud would stand alone if there were no contract

17

between the parties. In this case, if the declaration was non-existent, the Mahers would have not have a cause of action against the Association. The Mahers tacitly admit the need of a contractual relationship by referencing the declaration in the negligence and fraud counts against the Association. The declaration is a contract between the parties and the foundation upon which the Mahers brought this action against the Association, and it is apparent that the "fraud [and negligence] claims [are] . . . contract claims disguised as tort claims . . . ." *Gaddy,* at 231 W. Va. at 576, 746 S.E.2d at 586.

The Mahers cite *Dan Ryan Builders, Inc. v. Crystal Ridge Development Inc.*, 783 F.3d 976 (2015); *Thacker v. Tyree*, 171 W. Va. 110, 297 S.E.2d 885 (1982); and *Chamberlaine & Flowers Inc. v. McBee*, 177 W. Va. 755, 356 S.E.2d 626 (1987) for the proposition that gist of the action application disregards damages that were caused by the negligence and fraud of the Association. However, the cases cited by the Mahers do not support their position. First, none of these cases cast doubt on the validity of the gist of the action doctrine. Second, these cases do not lead us to find the circuit court improperly applied the gist of the action doctrine.

In *Dan Ryan Builders,* Mr. Lang and Mr. Ryan entered into a contract to subdivide and develop land for future residential properties. As part of the contract, Mr. Lang performed initial earth and grading work. Mr. Ryan subsequently built houses on land that was graded and sloped by Mr. Lang; however, the houses soon developed foundation cracks that Mr. Ryan believed were caused by poor workmanship from Mr.

18

Lang. Mr. Ryan brought suit against Mr. Lang (and Lang Brothers, Inc.), alleging, among other things, negligence on the part of Mr. Lang. The district court found that Mr. Ryan's claims were based primarily on the contract formed between him and Mr. Lang; therefore, the gist of the action doctrine barred Mr. Ryan's negligence action. The appellate court agreed, noting that Mr. Ryan could point to no independent legal duty for Mr. Lang to provide quality workmanship other than the contract between them. The Mahers' case is no different. The Association's declaration is the foundation of the Mahers' cause of action. Without it, the Mahers have no independent cause of action.

Moreover, neither *Thacker* nor *Chamberlaine* favor of the Mahers' case. *Thacker* requires *sellers* to disclose known defects that substantially affect the value of a property which a purchaser could not reasonably determine through a reasonably diligent inspection. In this case, the Association was not the seller of Unit 27; the Zeringues sold the condominium. *Thacker* does not apply to the Association. *Chamberlaine* applies the facts of its case to *Thacker*, but *Chamberlaine* does not address unit owners' associations or the gist of the action doctrine. As a result, the circuit court correctly determined the gist of the action doctrine applies to bar the Mahers' negligence and fraud allegations.

### E. Damages

Finally, the Mahers argue that the circuit court erred when it dismissed the special and consequential monetary damages claims against the Association. According to the Mahers, "[i]t is incomprehensible that the [c]ircuit [c]ourt has now dismissed all

damages claims of the Petitioner and directed claims for injunctive relief to be filed by the Plaintiffs as the sole remaining relief available to the Petitioners . . . ." However, the circuit court order does not go as far as the Mahers argue. In fact, the limitation of monetary damages in the circuit court's order is quite narrow. The order states that "[t]o the extent the [Mahers] are claiming monetary damages from [the Association] *for repairs to the Common Elements*, there is no genuine issue of material fact as to whether the Plaintiffs are entitled to pursue this form of relief." (emphasis added). The order goes on to cite the declaration and its limitation of remedies for breach against the Association to injunctive relief. The monetary damages portion of the order only addresses the claim that the Association failed to repair common elements.[9]

The declaration governing remedies to enforce the Association's duties states: "[e]ach provision of this Declaration with respect to the Association or the Common Elements shall be enforceable . . . by any Owner by a proceeding for injunctive relief." The circuit court found this to be unambiguous. "In construing the terms of a contract, we are guided by the common-sense cannons of contract interpretation. One such canon teaches that contracts containing unambiguous language must be construed according to their plain and natural meaning." *Anania v. Snowshoe Mountain, Inc.*, No. 13-0406, 2014 WL 2694219, at *3 (W. Va. May 30, 2014) (memorandum decision) (citations omitted) (addressing provisions of a unit owners' association's declaration). The circuit court saw

---

[9] The circuit court's October 19, 2022, order denied the Association's motion to dismiss the Mahers' claim for punitive damages.

this contractual limitation and correctly ruled that the appropriate remedy for a unit owner to pursue against the Association is injunctive relieve, all in accordance with the declaration.

The Mahers argue that other statutory provisions, such as West Virginia Code § 36B-3-107 (1986) (requiring unit owners' associations to maintain and repair common elements); West Virginia Code § 36B-1-111 (1986) (unconscionability of contracts); and West Virginia Code § 36B-1-113 (1986) (remedies to be liberally construed) create independent causes of action, separate from obligations outlined in the declaration that entitle them to remedies beyond those in the declaration. However, Counts I, II, II and IV of the amended complaint do not allege any specifically cited statutory violations and rest solely on claims that the Association violated specific provisions of the declaration. Moreover, the circuit court did not find any exception to the general remedy rule under the Uniform Act set forth in West Virginia Code § 36B-1-113 which limits consequential and special damages for claims brought under the Uniform Act except as specifically provided in the Uniform Act or by other rule of law. We agree with the circuit court that the Mahers' remedies against the Association are limited by the declaration which affords injunctive relief and other appropriate relief that the circuit court in its discretion might find appropriate. The Mahers fail to establish an abuse of discretion by the circuit court in limiting the remedy against the Association to the remedy specified in the declaration.

## IV. CONCLUSION

The circuit court's October 19, 2022, order correctly found that the Association owed no legal duties to the Mahers prior to the condominium sale, that their negligence and fraud claims are barred by the gist of the action doctrine, and that the Mahers' may not recover special and consequential monetary damages for alleged failure to repair common elements insofar the governing declaration limits their remedy for such alleged breaches to injunctive relief.

Affirmed.